**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIEL KEMPF, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>TRANSUNION, LLC,<br>Defendant. | **Case No.:**<br>**COMPLAINT – CLASS ACTION**<br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Kempf ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against TransUnion, LLC ("TransUnion" or "Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. Plaintiff brings this class action lawsuit individually and on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII" or "Private Information")[1] who were impacted by a data breach Defendant experienced on or around July 28, 2025 (the "Data Breach" or the "Breach").

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

3. Defendant is a Delaware limited liability company with its principal place of business and corporate headquarters in Chicago, Illinois. TransUnion is one of three nationwide consumer credit reporting agencies in the United States and provides credit reporting, credit scoring, fraud prevention, identity protection, and related data analytics services to millions of consumers and businesses worldwide.[2]

4. Defendant was bound by (and is still bound by) numerous statutory, regulatory, contractual, and common law duties and obligations, including under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which imposes duties on consumer reporting agencies like Defendant to ensure the accuracy and security of consumer information. Defendant was also bound (and is still bound by) its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. On July 28, 2025, Defendant sustained a cybersecurity incident involving a third-party application serving its customer support operations.[3]

6. Defendant purportedly launched an investigation to determine the nature and scope of the incident. The investigation determined that the Breach accessed and exposed customers', including Plaintiff's, Private Information, which included names, Social Security numbers ("SSNs"), contact information, and other personal identifiers.[4]

7. On August 28, 2025, Defendant notified the office of the Maine Attorney General

---

[2] *About Us*, TransUnion, LLC: https://www.transunion.com/about-us (last visited September 3, 2025).

[3] *Exhibit 1*: Daniel Kempf's Notice Letter.

[4] *Id.*

and began sending notice letters to individuals whose Private Information may have been compromised in the Data Breach.[5]

8. Defendant failed to take precautions designed to keep individuals' Private Information secure.

9. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information it collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from Plaintiff's and Class Members' Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10. Plaintiff and Class Members have suffered irreparable harm due to the sensitive nature of the data exposed through the Data Breach. For instance, Plaintiff and Class Members have lost the ability to control their Private Information and are subject to an increased risk of identity theft.

11. Defendant, despite having the financial wherewithal to prevent the Data Breach, and despite knowledge that credit reporting agencies are a major target of hackers (as evidenced by the massive Equifax data breach in 2017), nevertheless failed to use reasonable security procedures and practices required to secure the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information to bad actors.

12. Furthermore, as a result of Defendant's inadequate digital security, including failure to adequately train employees against phishing attacks and failing to implement multi-

[5] *Data Breach Notification*, TransUnion, LLC, Office of the Maine Attorney General: https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 3, 2025).

factor authentication or intrusion detection systems, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and Class Members have suffered and will continue to suffer injuries including: (1) financial losses caused by misuse of their Private Information; (2) the loss or diminished value of their Private Information as a result of the Data Breach; (3) lost time associated with detecting and preventing identity theft; (4) theft of personal and financial information; (5) invasion of privacy; and (6) the ongoing risk of future harm.

13. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (a) adequately protect the Private Information of Plaintiff and Class Members; (b) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (c) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (d) timely notify Plaintiff and Class Members of the Data Breach.

14. Plaintiff brings this action individually and on behalf of Classes of similarly situated individuals against Defendant for: negligence; unjust enrichment; breach of implied contract; breach of confidence; violation of the California Consumer Privacy Act; and for declaratory and injunctive relief.

15. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose Private Information was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

***Plaintiff***

16. Plaintiff Daniel Kempf is a natural person and citizen of Chula Vista, California, where he intends to remain.

***Defendant***

17. Defendant is a Delaware limited liability company with its principal place of business and corporate headquarters located at 555 W. Adams St, Chicago, Illinois 60661.[6]

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100, and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship.[7] Thus, minimal diversity exists under 28 U.S.C. § 1332 (d)(2)(A).

19. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

20. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

21. TransUnion is one of the three nationwide consumer credit reporting agencies in the United States and provides credit reporting, credit scoring, fraud prevention, identity

---

[6] *Contact Us*, TransUnion, LLC: https://www.transunion.com/about-us/global-locations/north-america (last visited September 3, 2025).

[7] *Data Breach Notification*, TransUnion, LLC, Office of the Maine Attorney General: https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 3, 2025).

protection, and related data analytics services to millions of consumers and businesses worldwide.[8] TransUnion also maintains information related to the credit history of consumers and provides the information to credit grantors who are considering a borrower's application for credit or who have extended credit to the borrower.

22. Plaintiff and Class Members were required to disclose their PII to TransUnion in connection with their use of TransUnion's services, and TransUnion compiled, maintained, and furnished Class Members' PII, in connection with Class Members' acquisition of services. TransUnion was allowed to perform such services, involving such sensitive information only if it adhered to the requirements of laws meant to protect the privacy of such information, such as the Fair Credit Reporting Act and the Gramm-Leach-Bliley Act ("GLBA").[9] TransUnion's maintenance, use, and furnishing of such PII is and was intended to affect Plaintiffs and other Class members, and the harm caused by disclosure of that PII in the Data Breach was entirely foreseeable to TransUnion.

23. TransUnion's privacy policy states, in relevant part: that "[it] maintain[s] a comprehensive information security program with administrative (policies, standards, and processes), physical, and technical controls designed to protect the confidentiality, integrity, and accessibility of personal information."[10]

24. Upon information and belief, Defendant made promises and representations to consumers, including Plaintiff and Class Members that it would keep safe and confidential the

---

[8] *About Us*, TransUnion, LLC: https://www.transunion.com/about-us (last visited September 3, 2025).

[9] *Privacy Policy*, TransUnion, LLC: https://www.transunion.com/privacy/transunion (last visited September 3, 2025).

[10] *Id.*

Private Information collected from them, and would maintain the privacy of that information.[11]

25. Plaintiff and Class Members provided their Private Information to Defendant, or Defendant collected that information about Plaintiff and Class Members as part of its ordinary business practices, with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from unauthorized access by third parties.

**B. The Data Breach**

27. On July 28, 2025, Defendant experienced a cybersecurity incident involving a third-party application serving its customer support operations.[12]

28. Defendant purportedly launched an investigation to determine the nature and scope of the incident. The investigation determined that the unauthorized access included the sensitive Private Information of Defendant's customers, including Plaintiff.[13]

29. Upon information and belief, the following types of sensitive Private Information may have been impacted in the Data Breach: names, billing addresses, email addresses, dates of birth, SSNs, and other personal identifiers of TransUnion customers.[14]

---

[11] *Id.*

[12] *Exhibit 1*: Daniel Kempf's Notice Letter.

[13] *Id.*

[14] *See* Data Security Breach Reports, Texas Office of the Attorney General, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (reporting for

30. On August 28, 2025, Defendant notified the office of the Maine Attorney General and began sending notice letters to individuals whose information may have been compromised in the Data Breach.[15]

31. Defendant failed to take precautions designed to keep individuals' Private Information secure.

32. While Defendant sought to minimize the damage caused by the Data Breach, it has not denied, and cannot deny, that there was unauthorized access to the Private Information of Plaintiff and Class Members.

33. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

34. While TransUnion has not disclosed the identity of the third-party application through which customer PII was compromised, upon information and belief, the application was the software-as-a-service platform provided by Salesforce.

35. Several clients of Salesforce – including Farmers Insurance, Allianz Life, Google, Workday, Cisco, Chanel, Qantas Airways, Louis Vuitton North America, and Christian Dior –

377,357 affected Texans, "name of individual; Social Security Number Information; Date of Birth"); Bill Toulas, *TransUnion Suffers Data Breach Impacting over 4.4 Million People*, BleepingComputer, August 28, 2025, https://www.bleepingcomputer.com/news/security/transunion-suffers-data-breach-impacting-over-44-million-people/ (reporting a sample of stolen data including names, billing addresses, phone numbers, email addresses, dates of birth, and unredacted Social Security Numbers).

[15] *Data Breach Notification*, TransUnion, LLC, Office of the Maine Attorney General: https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 3, 2025).

have reported data breaches tied to exploiting Salesforce-linked applications.[16, 17]

36. Indeed, on or about August 28, 2025, information security and technology news publication *BleepingComputer* confirmed with two sources, one being the cybercrime group allegedly behind the Salesforce-linked attacks, that the TransUnion Data Breach is linked to the Salesforce-related attacks on, non-exhaustively, Google, Farmers Insurance, Allianz Life, Workday, Pandora, Cisco, Chanel, and Qantas.[18]

**C. Defendant Failed to Prevent, Identify, and Timely Report the Data Breach**

37. Defendant admits that an unauthorized third party accessed its customers' data. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

38. According to public reporting,[19, 20] Cybercriminals exploited Salesforce-linked vulnerabilities by tricking Defendant's employees into connecting their company's Salesforce

---

[16] *See* Sara Mosqueda, *Credit Reporting Agency TransUnion Data Breach exposes More Than 4.4 Million Americans' Sensitive Information*, Asis Online Security Management, September 3, 2025, https://www.asisonline.org/security-management-magazine/latest-news/today-in-security/2025/september/transunion-shinyhunters-hack/

[17] *See* Kurt Knutsson, *TransUnion becomes latest victim in major wave of Salesforce-linked cyberattacks, 4.4M Americans affected*, Fox News, August 31, 2025, https://www.foxnews.com/tech/transunion-becomes-latest-victim-major-wave-salesforce-linked-cyberattacks-4-4m-americans-affected.

[18] Bill Toulas, *TransUnion Suffers Data Breach Impacting over 4.4 Million People*, BleepingComputer, August 28, 2025, https://www.bleepingcomputer.com/news/security/transunion-suffers-data-breach-impacting-over-44-million-people/.

[19] David Ruiz*, How Google, Adidas, and more were breached in a Salesforce scam,* MalwareBytes, August 7, 2025, https://www.malwarebytes.com/blog/news/2025/08/how-google-adidas-and-more-were-breached-in-a-salesforce-scam (last visited September 3, 2025).

[20] Nir Varon, *How Threat Actors Used Salesforce Data Loader for Covert API Exfiltration*, Mitiga Security, August 20, 2025, https://www.mitiga.io/blog/how-threat-actors-used-salesforce-data-loader-for-covert-api-exfiltration (last visited September 3, 2025).

environment to a fake version of Salesforce's "Data Loader" app controlled by the cybercriminals. The attackers typically used voice phishing (vishing) calls to convince target employees to enter an eight-digit code into Salesforce's legitimate connection setup page. This code linked the company's Salesforce environment to the criminals' fraudulent app. Once connected, the cybercriminals gained full access to import, export, update, and delete data within the target company's Salesforce system. In Defendant's case, this meant that unauthorized access to customer information stored in their Salesforce environment required its employees to unknowingly help the attackers by falling for the phishing scam. In other words, this method exploits basic social engineering vulnerabilities that Defendant failed to mitigate through employee training or technical safeguard.

39. The Private Information that Defendant allowed to be exposed in the Data Breach is the type of information that Defendant knew or should have known would be the target of cyberattacks.

40. Despite its own knowledge of the inherent risks of cyberattacks and notwithstanding the FTC's data security principles and practices,[21] and the 2017 Equifax data breach, Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

41. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[22] Immediate notification of a Data Breach is critical so that those impacted can

---

[21] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited September 3, 2025).

[22] *Id.*

take prompt measures to protect themselves.

42. Here, Defendant failed to provide timely notice, waiting several weeks after becoming aware of the Data Breach before informing impacted individuals.

**D. The Harm Caused by the Data Breach Now and Going Forward**

43. Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[23]

44. The type of data that may have been accessed and compromised here – PII including, at least, names, SSNs, and dates of birth – are routinely used to perpetrate fraud and identity theft.

45. Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

46. Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity. The stolen Private Information is then bought and sold by malicious actors on the dark web for profit.[24]

---

[23] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited September 3, 2025).

[24] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020), https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited September 3, 2025).

47. For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[25] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[26]

48. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[27] Criminals also purchase access to entire company data breaches, with prices ranging from $900 to $4,500.[28]

49. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[29]

50. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[30] Here, Defendant did not

---

[25] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited September 3, 2025).

[26] *Id.*

[27] *Id.*

[28] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited September 3, 2025).

[29] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020), https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion (last visited September 3, 2025).

[30] *Id.*

rapidly report to Plaintiff and Class Members that their Private Information had been stolen. Instead, Defendant notified those impacted several weeks after learning of the Data Breach.

51. Because of the Data Breach, Plaintiff's and Class Members' Private Information has been exposed to criminals for misuse. The injuries they suffered, or likely to suffer, as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their Private Information being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their Private Information entrusted to Defendant with the mutual understanding that Defendant would safeguard it against theft and not allow access to and misuse of their Private Information by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

52. In addition to seeking a remedy for economic harm, Plaintiff and the Class have a continuing interest in ensuring that their Private Information remains secure and protected from further misappropriation or theft.

53. Defendant disregarded the rights of Plaintiff and Class Members by: (a) negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust

security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members with prompt and accurate notice of the Data Breach.

54. As a direct and proximate result of Defendant's wrongful actions and the Data Breach, Plaintiff and Class Members face imminent, ongoing, and heightened risks of identity theft and fraud. To address these risks, they have been compelled to incur financial and temporal costs by, among other things, purchasing credit monitoring and internet monitoring services, regularly reviewing financial records, instituting or lifting credit freezes, and modifying or closing accounts. Plaintiff and Class Members have suffered, and will continue to suffer, these damages well into the foreseeable future.

***Plaintiff Daniel Kempf's Experience***

55. Plaintiff Kempf is a current customer of Defendant who uses TransUnion's services to monitor his credit.

56. Defendant sent Plaintiff Kempf a Notice letter dated August 26, 2025, informing him that his Private Information was compromised in the Data Breach.

57. Defendant was in possession of Plaintiff Kempf's Private Information before, during, and after the Data Breach.

58. Plaintiff Kempf reasonably understood and expected that Defendant would safeguard his Private Information and timely and adequately notify him in the event of a data breach. Plaintiff Kempf would not have allowed Defendant, or anyone in Defendant's position, to maintain his Private Information if he believed that Defendant would fail to implement reasonable and industry-standard practices to safeguard that information from unauthorized access.

59. Plaintiff Kempf greatly values his privacy and Private Information and takes reasonable steps to maintain the confidentiality of his Private Information. Plaintiff Kempf is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

60. Plaintiff Kempf stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

61. Because of the Data Breach, Plaintiff Kempf has spent several hours researching the Data Breach, reviewing his bank accounts, monitoring his credit report, and other necessary mitigation efforts. This is valuable time that Plaintiff Kempf otherwise would have spent on other activities, including but not limited to work and/or recreation.

62. Subsequent to the Data Breach, Plaintiff has suffered numerous, substantial injuries including, but not limited to: (i) invasion of privacy; (ii) theft of his PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) nominal damages; and (vii) the continued and certainly increased risk to his PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

63. Plaintiff additionally suffered actual injury in the form of experiencing an increase

in spam calls, texts, and/or emails, which, upon information and belief, was caused by the Data Breach. This misuse of his PII was caused, upon information and belief, by the fact that cybercriminals are able to easily use the information compromised in the Data Breach to find more information about an individual, such as their phone number or email address, from publicly available sources, including websites that aggregate and associate personal information with the owner of such information. Criminals often target data breach victims with spam emails, calls, and texts to gain access to their devices with phishing attacks or elicit further personal information for use in committing identity theft or fraud.

64. The Data Breach has caused Plaintiff Kempf to suffer stress and anxiety, which has been compounded by Defendant's delay in notifying him of the fact that his Private Information was acquired by criminals because of the Data Breach.

65. Plaintiff Kempf anticipates spending considerable time and money on an ongoing basis in his efforts to mitigate and address the harms caused by the Data Breach. In addition, Plaintiff Kempf will be susceptible to an increased risk of identity theft and fraud for years to come.

66. Plaintiff Kempf has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

67. As a direct and traceable result of the Data Breach, Plaintiff Kempf suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to:

a. lost time and money related to monitoring his accounts and credit reports for fraudulent activity;

b. loss of privacy due to his Private Information being accessed and stolen by cybercriminals;

c. loss of the benefit of the bargain because Defendant did not adequately protect his Private Information;

d. imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web;

e. diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff Kempf; and

f. other economic and non-economic harm.

## CLASS ALLEGATIONS

68. Plaintiff brings this class action, individually and on behalf of the following Class:

> All persons in the United States whose Private Information was compromised by the Data Breach publicly announced by Defendant in August 2025 (the "Class").

69. Plaintiff also seeks to certify a California Subclass that is defined as follows:

> All persons residing in California whose Private Information was compromised by the Data Breach publicly announced by Defendant in August 2025 (the "California Subclass").

70. Specifically excluded from the Class and California Subclass are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

71. Plaintiff reserves the right to amend the definitions of the Class and California Subclass above or add a Class or Subclass if further investigation and/or discovery reveals that the definitions of the Class or California Subclass should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

72. This action may be certified as a class action because it satisfies the numerosity,

commonality, typicality, adequacy, and superiority requirements therein.

73. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, and based on news reports, Plaintiff estimates that the Class is comprised of over four million Class Members. The Class is sufficiently numerous to warrant certification.

74. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had his Private Information compromised because of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

75. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

76. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, unjustly retain improperly obtained revenues, or otherwise escape liability for its wrongdoing as asserted herein.

77. Predominant Common Questions: The claims of all Class Members present

common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Plaintiff's and Class Members' Private Information was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

g. Whether Defendant took sufficient steps to secure individuals' Private Information;

h. Whether Defendant was unjustly enriched; and

i. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

78. Information concerning Defendant's policies is available from Defendant's records.

79. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

80. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

81. Given that Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient, and there is no complete and adequate remedy at

law.

## CAUSES OF ACTION
## COUNT I
## NEGLIGENCE
## (On Behalf of Plaintiff and the Class)

82. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs 1 – 81 above as though fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the Class Members.

84. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

85. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

86. Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information, within its possession, was compromised, as well as the precise types of information that were compromised.

87. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, such as Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected individuals' Private Information.

88. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

89. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

90. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

91. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems; and

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

92. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

93. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

94. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

95. Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the

National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

96. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches – especially involving credit reporting agencies.

97. It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

98. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

99. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

100. Further, as a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members were unable to take the necessary precautions to mitigate damages by preventing future fraud. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties,

will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including, but not limited to: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Private Information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

101. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in paragraphs 1 – 81 above as though fully set forth herein.

103. This count is pleaded in the alternative to Count III below.

104. Plaintiff and Class Members conferred a benefit on TransUnion by turning over their Private Information to Defendant and by paying for services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

105. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information.

106. Under principles of equity and good conscience, Defendant should not be permitted

to retain the full value of Plaintiff's and the Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

107. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

108. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 – 81 as though fully set forth herein.

109. Plaintiff and Class Members conferred a benefit on TransUnion by turning over their Private Information to Defendant and by paying for services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

110. Plaintiff and the Class provided and entrusted their Private Information to Defendant. Plaintiff and the Class provided their Private Information to Defendant as part of Defendant's regular business practices.

111. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

112. Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Private Information. In exchange, Defendant agreed to, among other things, and Plaintiff and Class Members understood that Defendant would: (a) provide services to Plaintiff and Class Members; (b) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Private Information; and (c) protect Plaintiff's and Class Members' Private Information in compliance with federal and state laws, regulations, and industry standards.

113. Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in its possession would ***only*** be used to provide the agreed-upon services, and that Defendant would take adequate measures to protect Plaintiff's and Class Members' Private Information.

114. A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff's and Class Members' Private Information to be accessed in the Data Breach.

115. Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

116. These exchanges constituted an agreement and meeting of the minds between the parties.

117. When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the promises of privacy and confidentiality. Conversely, Defendant presumably would not have taken Plaintiff's and Class Members' Private Information if it did not intend to provide Plaintiff and Class Members with its promised confidentiality.

118. Defendant was therefore required to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

119. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

120. Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff's and Class Members' Private Information.

121. Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

122. As a direct and proximate result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

**COUNT IV**
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiff and the Class)**

123. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 – 81 as though fully set forth herein.

124. At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Private Information entrusted to Defendant.

125. As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

126. Plaintiff and Class Members entrusted Defendant with their Private Information with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be disseminated to any unauthorized third parties.

127. Plaintiff and Class Members also entrusted Defendant with their Private Information with the explicit and implicit understanding that Defendant would take precautions to protect that Private Information from unauthorized disclosure.

128. Defendant voluntarily received Plaintiff's and Class Members' Private Information in confidence with the understanding that their Private Information would not be disclosed or disseminated to the public or any unauthorized third parties without their consent.

129. As a result of Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

130. As a direct and proximate cause of Defendant's actions and omissions, Plaintiff and the Class have suffered damages.

131. But for Defendant's disclosure of Plaintiff's and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' Private Information, as well as the resulting damages.

132. The injury and harm Plaintiff and the Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information. Defendant knew or should have known its methods of accepting and securing

Plaintiff's and Class Members' Private Information was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and Class Members' Private Information.

133. As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class Members, Plaintiff and the Class Members have suffered and will suffer injury, including, but not limited to: (i) identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of individuals; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

134. As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, loss of privacy and other economic and non-economic losses.

**COUNT V**
**VIOLATIONS OF CALIFORNIA'S CONSUMER PRIVACY ACT**
**(Cal. Civ. Code § 1798.100, *et seq.* ("CCPA"))**
**(On Behalf of Plaintiff and the California Subclass)**

135. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 – 81 as though fully set forth herein.

136. The California Legislature has explained: "The unauthorized disclosure of personal information and the loss of privacy can have devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm."[31]

137. The California Consumer Privacy Act ("CCPA") imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant failed to implement such procedures which resulted in the Data Breach.

138. It also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

139. Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose

[31] *See* Off. of the Att'y Gen. of Cal., Initial Statement of Reasons for Proposed Adoption of Cal. Consumer Privacy Act Reguls. (Stats. 2018, Ch. 55 [AB 375], as amended by Stats. 2018, Ch. 735 [SB 1121]), at II. (Sep. 16, 2019), https://oag.ca.gov/sites/all/files/agweb/pdfs/privacy/ccpa-isor-appendices.pdf (last visited September 3, 2025).

nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

140. Plaintiff Kempf and California Subclass Members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

141. Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

a. is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners;"

b. "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information;"

c. does business in California; and

d. has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues

from selling consumers' personal information.

142. The Private Information taken in the Data Breach is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and California Subclass Members' unencrypted names and SSNs, among other information.

143. Plaintiff's and California Subclass Members' unencrypted and unredacted PII was subject to unauthorized access and exfiltration, theft, or disclosure because their PII, was wrongfully taken, accessed, and viewed by unauthorized third parties.

144. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and California Subclass Members' PII. Defendant failed to implement reasonable security procedures to prevent an attack on its server or network, including its email, customer tracking, and customer record keeping systems, by hackers and to prevent unauthorized access of Plaintiff's and California Subclass Members' PII as a result of the attack.

145. As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff Kempf seeks actual damages and injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

146. On September 3, 2025, Plaintiff Kempf provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). If Defendant fails to respond, or has not cured, or is unable to cure the violation within 30 days thereof, Plaintiff Kempf will amend this Complaint to seek all relief available under the CCPA including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. *See* Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

**COUNT VI**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and the Class)**

147. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 – 81 as though fully set forth herein.

148. This claim is pleaded in the alternative to the negligence, breach of implied contract, unjust enrichment, and breach of confidence claims.

149. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and common law described in this Complaint.

150. Defendant owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' PII.

151. Defendant still possesses PII regarding Plaintiff and Class Members.

152. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and the risk remains that further compromises of his PII will occur in the future.

153. Additionally, under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure its current and former customers' PII from unauthorized disclosure and theft;

b. Defendant's existing security measures do not comply with its implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect its current and former

customers' PII; and

c. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure its current and former customers' PII.

154. The Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect its current and former customers' PII, including the following:

a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members; and

b. Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct and problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

iv. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

v. conducting regular database scanning and security checks;

vi. conducting internal training and education, on a regular basis, to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii. routinely and continually purging all former client data that is no longer necessary in order to adequately conduct its business operations; and meaningfully educating its current and former clients about the threats they face with regard to the security of their PII, as well as the steps Defendant's current and former clients should take to protect themselves.

155. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Defendant. The risk of another such breach is real, immediate, and substantial.

156. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

157. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus preventing future injury to Plaintiff and Defendant's current and former clients whose PII would be further impacted.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and his counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the laws referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For damages, including nominal damages, in amounts to be determined by the Court and/or jury;

(e) For an award of statutory damages or penalties to the extent available;

(f) For pre-judgment interest on all amounts awarded;

(g) For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

(h) For an order of restitution and all other forms of monetary relief; and

(i) Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 4, 2025

Respectfully Submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
FACUNDO M. SCIALPI*

*s/ Stuart A. Davidson*
STUART A. DAVIDSON

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
fscialpi@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
JAMES E. BARZ (SBN 6255605)
FRANK A. RICHTER (SBN 6310011)
200 S. Wacker Drive, 31st Floor.
Chicago, IL 60606
Telephone: 630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

LEVI & KORSINSKY, LLP
MARK S. REICH*
MELISSA G. MEYER*
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212/ 363-7500
212/363-7171 (fax)
mreich@zlk.com
mmeyer@zlk.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice* forthcoming